## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

ALPHONSO PIERRE ALLISON,

      Petitioner,

v.                                             Case No. 19-CV-349-SPM

UNITED STATES OF AMERICA,

      Respondent.

### <u>MEMORANDUM AND ORDER</u>

**MCGLYNN, Judge:**

Pending before the Court is a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Doc. 7) filed by Petitioner Alphonso Pierre Allison ("Allison"). Within the motion, Allison asserted claims of ineffective assistance of trial counsel; however, Allison was appointed three separate CJA attorneys that represented him at different times and acquiesced with plea negotiations. For the reasons set forth below, the motion is DENIED.

### FACTUAL & PROCEDURAL BACKGROUND

On September 6, 2016, Allison was indicted by the grand jury on two-counts: (1) Conspiracy to distribute heroin and crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 841(b)(1)(C); and (2) Possession of a firearm by a felon in violation of Title 18 U.S.C. 922(g)(1). *United States v. Allison*, 16-cr-40037-SMY at Doc. 1 (S.D. Ill.)(CR. 1).[1]  With respect to count 1, the amount of a mixture and

---

[1] All documents cited to the criminal case will be designated as "CR.", while all documents cited to this 2255 matter will designated as "Doc.".

substance containing cocaine base "crack cocaine" involved in the overall conspiracy exceeds 28 grams (*Id.*). With respect to Count 2, the firearm involved was a High Standard, model Sentinel R-101, .22 caliber revolver, bearing serial number 806444 (*Id.* at p. 2). There was also a firearm forfeiture allegation (*Id*)

On September 15, 2016, the federal public defender was appointed, and this matter was set for final pretrial conference on 10/26/16 and for jury trial on 11/14/2017[2] (CR. 10). On September 19, 2016, Judith Kuenneke entered her appearance to represent Allison on behalf of the office of the federal public defender, but she was granted leave to withdraw on October 5, 2016 at which time John Stobbs was appointed as CJA attorney (CR. 16 and 19).

On October 7, 2016, John Stobbs entered his appearance on behalf of Allison (CR. 20). On October 13, Stobbs filed a motion to continue final pretrial and jury trial, which was granted without objection to January 5, 2017 and to January 30, 2017, respectively (CR. 21 and 23). On January 4, 2017, Stobbs filed another motion to continue, which was granted, rescheduling the final pretrial for March 16, 2017 and jury trial for April 3, 2017, respectively (CR. 24-25). On March 8, 2017, Stobbs advised the Court the parties were in the process of finalizing a plea agreement and again sought a continuance (CR. 26). On March 13, 2017, the court continued the final pretrial to March 21, 2017, but kept the trial setting of April 3, 2017 (CR. 27).

On March 20, 2017, the final pretrial was converted to a change of plea hearing (CR. 28). On March 21, 2017, the change of plea hearing was cancelled, and the final

[2] Jury trial was initially erroneously scheduled for November 14, 2017; however, the clerical error was rectified to reflect a correct trial date of November 14, 2016 (CR. 22).

pretrial was set for April 27, 2017 and jury trial was reset for May 8, 2017 (CR. 30). On April 3, 2017, Stobbs filed a motion to set a change of plea date and advised that Allison "desired additional time in which to think about his options" (CR. 31). Accordingly, the pretrial scheduled for April 27, 2017 was converted to change of plea hearing and was changed from Benton to East St. Louis (CR. 33). On April 17, 2017, Allison filed a *pro se* "motion for reconsideration of plea offer" which was stricken by the Court and Allison was admonished that he shall not personally file anything with the Court, unless he asks for counsel to be allowed to withdraw (CR. 35). On April 27, 2017, Stobbs advised the Court that Allison was not prepared to enter into a plea, and he orally sought leave to withdraw from representation as there was a complete breakdown in communication (CR. 36). At the hearing, Allison was placed under oath and advised that he was rejecting the plea offer and indicated that he did not feel that Stobbs had his best interest at heart (Doc. 25-1, pp. 3-4). On April 28, 2017, Stobbs filed a written motion to withdraw reiterating the complete breakdown in the attorney/client relationship (CR. 37). The motion was granted on that same date, and CJA panel attorney, James Stern, was appointed to represent Allison (CR. 39). This case was reset for pretrial conference on June 15, 2017 and jury trial on 26, 2017 (*Id.*).

On May 2, 2017, James Stern entered his appearance in the criminal matter (CR. 40). On June 12, 2017, Allison sent a *pro se* letter to the clerk's office and was again advised that direct contact with the judge is improper and will not be considered (CR. 42). On June 13, 2017, the final pretrial conference set for 6/15/17 was converted to a change of plea hearing (CR. 43).

On June 15, 2017, Stern advised the court that Allison would not be entering a plea and that he wanted a jury trial (CR. 44). Because of the change, Stern orally requested to continue the trial setting (Doc. 26-1). The transcript of the proceedings reflects that the court was reluctant to continue but would look at any motion filed by Stern (Doc. 26-1, pp. 3). Allison advised that his arraignment was in September 2016 and the case had "grown whiskers" (*Id.*). It was "not the first time Mr. Allison has changed his mind at the last minute" and that he had an "absolute constitutional right" to not enter a plea, but the trial date was not going to be continued again without a motion and without due consideration of the interests of justice (Id. at 3-6).

On June 16, 2017, Stern filed a motion to continue trial, wherein he advised the court he was the replacement defense attorney who just took over the case on April 28, 2017 (CR. 45). Stern claimed that Allison waffled between a plea and a trial and had a hard time communicating with his family in Chicago from Murphysboro (*Id.*). Stern asserted that Allison would be prejudiced without a trial continuance and advised that the government had no objection (*Id.*). On June 19, 2017, in furtherance of the ends of justice, an Order was entered continuing the pretrial to July 12, 2017 and jury trial to July 17, 2017 (CR. 46).

On June 21, 2017, a three-count superseding indictment was returned against Allison (CR. 48). The Counts were broken down as follows: (1) Conspiracy to distribute heroin and crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 841(b)(1)(C); (2) Knowingly and intentionally distributing a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, in

violation of 21 U.S.C. 841(a)(1), 841(b)(1)(C) and Title 18 U.S.C. § 2; and, (3) Possession of a firearm by a felon, in violation of Title 18 U.S.C. 922(g)(1) (*Id*). In other words, count 1 remained as charged, a new Count 2 was issued and the previous count 2 became count 3. Additionally, the firearm forfeiture allegation was removed (*Id*).

On June 23, 2017, Allison was arraigned on the superseding indictment (CR. 54). In anticipation of trial, the government filed its information to establish prior conviction and its motion for notice of alibi defense (CR. 58-59). On June 27, 2017, the government filed its notice of intent to use proffer, acknowledging that the case was set for jury trial on July 17, 2017 (CR. 61).

On June 28, 2017, Allison entered guilty pleas to all three counts of the superseding indictment (CR. 62-66). In the transcript of the proceeding, Stern advised the court that Mr. Allison wished to enter a change of plea to counts 1-3 of the superseding indictment (Doc. 27-1). Allison was placed under oath and the Court went through his background before getting to the specifics of this case (*Id*. at pp. 3-4). Allison advised that he reviewed the superseding indictment and understood the charges against him (*Id*. at 4-5). Allison also indicated that he discussed the indictment and case with Stern and that he was satisfied with the representation provided by Stern.  (*Id*.). After the Court went through the potential penalties, Allison advised that he had no questions about the penalties or charges against him (*Id*. at 6). Judge Yandle explained Allison's rights, including that he was innocent until proven guilty, the he would need to be proven guilty beyond a reasonable doubt, that

he had a right to a jury trial and a right to confront his accusers, that he had a right to bring in witnesses to testify in his own behalf, that he had a right against self-incrimination, and that he had a right to have an attorney with him at every stage of the proceedings (*Id.* at 7). Allison indicated he understood those rights (*Id.*).

While on the record, Allison was then provided with a copy of the plea agreement, and he confirmed his signature was on the last page and that he had sufficient opportunity to read and review with Stern before he signed it (*Id.* at 7-8). Allison stated that he understood that the Court was not bound by the Plea Agreement. (*Id.* at 8). According to the government, the Plea Agreement contained two different possibilities; first, that Allison is found to be an armed career criminal and second is that he is not found to be an armed career criminal (*Id.* at 8). The government went through the potential sentencing ranges under both scenarios (*Id.* at 9-10).

When questioned, Allison indicated he was a "little lost", so the Court went through the agreement until he indicated his understanding (*Id.* at 10-11). Allison then expressed his intent to plead guilty, and reiterated that he understood the Court could not withdraw the guilty plea after it was accepted and that the Court was not bound by the terms of the plea agreement (*Id.* at 11-12).

Of note, Allison also signed the stipulation of facts prior to the plea hearing (CR. 65), and confirmed that his signature was on the last page of the document and that he had discussed the stipulation with Stern before signing it (*Id.* at 14-15). In the stipulation, Allison affirmed that he was involved with others in the distribution

of heroin and crack cocaine, including "John John", "Up", "Sheena Carr", "Ms. Cathy", and "Skittles" (Doc. 65). Allison had been receiving dealer amounts of heroin, crack cocaine and cannabis from Chicago sources, then he and others distributed the drugs that were oftentimes obtained or provided on "fronts" (*Id*.). Allison sold heroin to a confidential source on March 31, 2016 (*Id*.). Agents executed a search warrant at Allison's residence where they located a revolver, U.S. currency, drug packaging materials, multiple scales and dealer amounts of heroin, crack cocaine and cannabis (*Id*. at p. 2). During a second search of Allison's residence, officers located additional U.S. currency, heroin and crack cocaine (*Id*.). When interviewed, Allison admitted to being involved with others in the distribution of heroin, crack cocaine and cannabis (*Id*.). Allison further admitted to receiving the revolver in return for $50.00 worth of crack cocaine, even though he had previously been convicted of numerous felony offenses including domestic battery and multiple drug offenses (*Id*.). Finally, Allison agreed that his conduct included at least 250 grams of heroin, 158 grams of crack cocaine and 12 pounds of cannabis (*Id*.).

On the record, the government recited the factual basis for the charges, as well as the stipulation as to the weight of substances involved (*Id*. at 12-14). Allison also agreed with the factual basis provided by the government and to the evidence they would present at trial (*Id*. at 15). Finally, Allison answered "Guilty" three times when asked how he plead to the charge in Count 1, Count 2 and Count 3 of the superseding indictment (*Id*.).

The presentence investigative report ("PSR") was issued on August 29, 2017

and reflected Allison's prior criminal history (CR. 67). On October 3, 2017, this case was called for sentencing, and both parties advised there were no objections to the PSR, nor any requests for corrections, alterations or additions (CR. 28-1). Allison advised that he received a copy of the PSR and went over it with Stern, but claimed there should be an objection (*Id.* at pp. 3-4). Stern attempted to clarify that Allison did not understand the gun enhancement and why he could not file an objection even though Allison did not use the gun (*Id.* at p. 5). Allison agreed that he could not object because the enhancement does not require use of the gun and that the PSR governed the Court's guideline calculations, which ranged between 188 and 235 months (*Id.* at p. 6-9). Both the government and Stern agreed to the low end and raised mitigating factors (*Id.* at pp. 11-18). Nevertheless, at the time of allocution, Allison claimed he "wanted to fight this case real bad" and "was led that if I don't plea, I'm going to spend the rest of my life in jail." (*Id.* at pp. 18-19). Allison then claimed "I have never been threatened so many times in my life" (*Id.* at p. 20). Allison claimed each appointed federal attorney was "giving no sign of a fight" and "This was not his wish or desire to take this plea" (*Id.* at p. 20). Allison also pointed a finger at the federal prosecutor for not dropping the gun charge, the Marshall for agreeing with Stobbs and Stern and Sheriff Burns who "threatened me right in front of my lawyer here that if I didn't plea he was going to testify that I did do it" (*Id.* at p. 20-21). Allison claimed he was "scared to death" and did not know what to do and only pleaded because he was "scared they will lose me in the system if I didn't" (*Id.* at 21). Because of Allison's demeanor and inconsistency in statements, the government requested a continuance of review the

transcripts of prior proceedings before the sentencing was completed (*Id.* at pp. 27-28). They also had some concerns about the acceptance of responsibility condition (*Id.*). The sentencing was continued to December 12, 2017 (*Id.* at p. 31).

On December 6, 2017, the sentencing was reset to December 18, 2017 due to a court conflict (CR. 73). On December 18, 2017, this matter was reset for a status conference on February 6, 2017 because Allison orally moved to terminate Stern and have substitute counsel appointed (CR. 75). At that hearing, Allison stated, "he was ineffective for me" and "I had wrote him three times … he made me feel that he had no intention of fighting" (29-1 at p. 3). On December 19, 2018, Stern was terminated and CJA Panel Attorney Preston Humphrey, Jr. was appointed (CR. 76).

On January 3, 2018, Preston Humphrey, Jr. entered his appearance (CR. 77). On February 6, 2018, the status conference was reset for February 7, 2018 (CR. 80). At that time, the sentencing was continued to April 10, 2018 and the parties were advised that there would be no further continuances, absent extraordinary circumstances (CR. 81). The transcript of the proceeding reflects that attorney Humphrey requested additional time to meet with Allison and go over the plea agreement (Doc. 30-1). Humphrey also advised the court that he advised Allison that he could not withdraw his guilty plea and needed to move forward with the sentencing (*Id.* at 4). The Court indicated its belief that Allison was playing a game, but that he was "about out of lifelines for further delaying the ultimate" (*Id.* at p. 5).

On April 10, 2018, a second sentencing hearing was held (CR. 82). At the hearing, the Court again reviewed the PSR along with the government's newly raised objection

to acceptance of responsibility credit, probation's addendum and psychiatric report from Wexford Health for the evaluation that occurred on February 15, 2018 (Doc. 31-1). The Court emphasized that at both the change of plea hearing and sentencing, she questioned and explored any possibility or issue with Allison's competency (*Id.* at pp. 3-4). Neither Allison nor his counsel indicated a competency issue (*Id.* at p. 4). Since the date of plea, Allison has been diagnosed with schizophrenia and has had a change in medication; however, there is "no issue of competency" (*Id.*). Attorney Humphrey reiterated that he "did not have any concerns about his [Allison's] competency" and he has believed from moment one that "Mr. Allison was indeed competent" (*Id.* at p. 6). Attorney Humphrey also advised that Allison had some regrets about the previous sentencing and would take back what he said during his previous allocution (*Id.*). Allison informed the Court that he was told to say what he did by his mother and that many people gave him advice and he "wasn't thinking clearly" because of nerves (*Id.* at p. 9). Allison stressed that he was "so nervous and so scared", but that "I did what I did and I regret it" (*Id.*). Allison admitted to selling heroin and said he let drugs control him, and that he was not in control (*Id.* at pp. 10-11). Allison also advised his comments about the prosecutor and Marshall were not true (*Id.* at p. 11). The prosecutor accepted Allison's apology about his prior conduct and withdrew the objection regarding acceptance of responsibility (*Id.* at p. 12). The Court then went thru the factors and ranges for the sentencing as well as the 3-level total reduction for Allison's acceptance of responsibility (*Id.* at p. 14). The government again recommended a low-end sentence of 188 months (*Id.* at p. 17). Following a review of the applicable §3553 factors, the

Court sentenced Allison to 188 months on the superseding indictment, with all counts to run concurrently and 8 years of supervised release, along with a $300 fine and $300 special assessment (*Id.* at p. 23).

On April 12, 2018, written judgment was entered (CR 86). On April 24, 2018, Allison filed a 2-page handwritten motion of ineffective counsel directed against Stern (CR 88)[3]. No affidavits of memorandum were filed with the motion.

On April 15, 2019, Allison filed the § 2255 form, which was indicated as a supplement to the prior handwritten filing (Doc. 5). On October 21, 2019, Allison filed an amended petition that stated the following ground for relief - trial counsel ineffective, with a reference to attached memorandum of law which set forth two theories for an ineffective assistance of counsel claim, as well as making arguments under both *Mathis* and *Rehaif* (Doc. 7). In an effort to thoroughly evaluate this petition, the Court will address all arguments that appear to have been raised, in whatever format.

## LEGAL STANDARD

Relief under 28 U.S.C. § 2255 is limited. Unlike a direct appeal in which a defendant may complain of nearly any error, relief under Section 2255 is reserved for extraordinary situations. *Prewitt v. United States*, 83 F.3d 812 (7th Cir. 1996). A petitioner may avail himself of relief under § 2255 only if he can show that there "are flaws in the conviction or sentence which are jurisdictional in nature, constitutional

---

[3] This Motion was initially filed in the criminal case. On March 25, 2019, the Court ordered it stricken and directed the clerk's office to file as a §2255 petition retroactively (now filed as Doc. 1 in 19-cv-349) and send petitioner a blank §2255 form (CR 90).

in magnitude, or result in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878 (7th Cir. 2013); *Accord Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004).

If the court determines that any of these grounds exists, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255 . In making that determination, the court must review the evidence and draw all reasonable inferences from it in a light most favorable to the government. *United States v. Galati*, 230 F.3d 254, 258 (7th Cir.2000); Carnine v. United States, 974 F.2d 924, 928 (7th Cir.1992).

Section 2255 cannot be used as a substitute for a direct appeal or to re-litigate issues decided on direct appeal. *Coleman v. United States*, 318 F.3d 754, 760 (7th Cir. 2003), *cert. denied*, 540 U.S. 926 (2003); *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009); *White v. United States,* 371 F.3d 900, 902 (7th Cir. 2004). Accordingly, a petitioner bringing a § 2255 claim is barred from raising: (1) issues raised on direct appeal, absent some showing of new evidence or changed circumstance; (2) non-constitutional issues that could have been, but were not raised on direct appeal; or, (3) constitutional issues that were not raised on direct appeal, absent a showing of cause for the "procedural default" and actual prejudice from the failure to appeal. *Castellanos v. United States,* 26 F.3d 717 (7th Cir. 1994). Despite that general requirement, defendants are not required to raise ineffective assistance of counsel claims on direct appeal to preserve them for collateral appeal purposes. *Massaro v.*

*United States,* 538 U.S. 500, 504 (2003).

## ANALYSIS

### I.      Ineffective Assistance of Trial Counsel

Allison raises two separate claims of ineffective assistance of counsel against Stern (Doc. 7). First, Allison asserts that Stern induced him to accept plea by threats and misrepresentations and by failing to investigate possible defenses. Second, Allison asserts that Stern failed to argue a buyer/seller relationship. While the legal standard is the same, the discussion of each argument will be distinct.

#### A. Applicable Law

Claims of ineffective assistance of counsel "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States,* 538 U.S. 500, 504 (2003). Under the law of this Circuit, because counsel is presumed effective, Allison "bears a heavy burden in making out a winning claim based on ineffective assistance of counsel." *United States v. Trevino,* 60 F.3d 333, 338 (7th Cir. 1995). In order to prevail on a claim for ineffective assistance of counsel upon collateral review, a petitioner must meet the two-pronged *Strickland* test and establish that "(1) his counsel's performance fell below an objective standard of reasonableness; and, (2) that his deficient performance so prejudiced his defense that he was deprived of a fair trial." *Fountain v. United States,* 211 F.3d 429, 433 (7th Cir. 2000) (*citing Strickland v. Washington,* 466 U.S. 668, 688-94 (1984)). Stated another way, under the *Strickland* test the defendant must show that his counsel's actions were not supported by a reasonable strategy, and that the error was

prejudicial. *Massaro*, 538 U.S. at 501.

The first prong of the Strickland test, classified as the "performance prong," calls for a defendant to direct the Court to specific acts or omissions forming the basis of his claim. *Trevino*, 60 F.3d at 338. The Court then must determine whether, in light of all the circumstances, those acts or omissions fell "outside the wide range of professionally competent assistance." *Id*. While making this assessment, the Court must be mindful of the strong presumption that counsel's performance was reasonable. *Accord Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000).

In evaluating an ineffective assistance claim, a court does not always need to analyze both prongs because failure to satisfy either prong is fatal to the claim. *United States v. Ebbole,* 8 F.3d 530, 533 (7th Cir. 1993) *citing Strickland,* 466 U.S. at 697. In other words, if the defendant fails to satisfy the first prong, there is no need to address the second prong.

If, however, the defendant satisfies the performance prong, he must then meet the "prejudice prong" of *Strickland*. *Ebbole,* 8 F.3d at 533. This requires the defendant to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Emezuo v. United States*, 357 F.3d 703, 707-08 (7th Cir. 2004) *citing Strickland*, 466 U.S. 52 (1985).

**B. Discussion**

**1. Plea**

Allison first contends that Stern was ineffective for inducing him to accept the plea agreement by threats and misrepresentations and for failing to investigate

possible defenses (Doc. 7). However, Allison does not provide any evidence of any threats or misrepresentations nor does he provide any information as to possible defenses that Stern failed to investigate. Furthermore, the change of plea hearing itself speaks to the contrary (Doc. 27-1), as does the sentencing transcript (Doc. 31-1). Furthermore, the government has provided an affidavit of James Stern regarding his representation of Allison (Doc. 32-3).

For a guilty plea to be valid, it "not only must be voluntary but must be knowing and intelligent". *Brady v. United States*, 397 U.S. 742, 748 (1970). For a plea to be intelligent, a defendant must first receive "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley v. United States*, 523 U.S. 614, 618 (1998). A defendant's claims of involuntariness or confusion may be insufficient to allow withdrawal of a plea "in the context of a record containing substantial indications of voluntariness and lack of confusion." *United States v. Patterson*, 576 F.3d 431, 437 (7th Cir. 2009) (quoting *United States v. Trussel*, 961 F.2d 685, 689 (7th Cir. 1992)).

To succeed on a claim that counsel was insufficient during the plea process, petitioner must show that "counsel's representation fell below an objective standard of reasonableness when measured against prevailing professional norms." *Gaylord v. United States,* 829 F.3d 500, 506 (7th Cir. 2016). Competent counsel will "attempt to learn all of the facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis before allowing his client to plead guilty." *Id.* The petitioner must also show that absent counsel's deficient performance, there

is a reasonable likelihood that he would not have pleaded guilty and would have instead gone to trial. *Id.*

There is no uniform approach to ensuring that a defendant understands the charges against him and potential sentence. *See United States v. LeDonne*, 21 F.3d 1418, 1423 (7th Cir. 1994). As a result, a court must examine the "totality of the circumstances" to determine whether a defendant's plea was intelligent. *See United States v. Bradley*, 381 F.3d 641, 645 (7th Cir. 2004). Courts may consider factors including: (1) the complexity of the charge; (2) the defendant's intelligence, age, and education; (3) whether the defendant was represented by counsel; (4) the district court's inquiry during the change of plea hearing and the defendant's responses; and (5) the evidence proffered by the government for its factual basis. *See LeDonne*, 21 F.3d at 1423.

At the change of plea hearing held on June 28, 2017, Judge Yandle placed the defendant under oath and observed him while going through a series of background questions (Doc. 27-1, pp. 3-4). The Court then explained the charges to Allison as well as the possible penalties (*Id.* at 5-6). At this hearing, Allison was represented by Stern and was asked, "Sir, are you fully satisfied with the counsel representation and advice Mr. Stern has provided you in this case?" To which he replied, "Yes". (*Id.* at 5). Allison also denied that any threats or promises were made to him in an effort to induce him to plead guilty and reiterated his intention to plead guilty before doing so to all three counts of the superseding indictment. (*Id.* at 11-12). After observing Allison and listening to his responses, the Court found that he knowingly, voluntarily and

competently pled guilty to the superseding indictment and adjudged him guilty of violating the offenses (*Id.* at 16).

The district judge is in the best position to assess the credibility of the defendant because the judge is intimately familiar with the record and has the opportunity to observe the defendant's demeanor at the hearing. *United States v. Messino*, 55 F.3d 1241 (7th Cir. 1995). There was no indicia of threats or misrepresentations at the plea hearing, and the Court found that Allison's plea was knowingly, voluntarily and competently made. That determination was made while Allison was in front of the Court. Furthermore, Stern's affidavit belies Allison's assertions (Doc. 32-3).

There is no evidence supporting the contentions made by Allison regarding threats and/or misrepresentations. Allison has not shown that Stern's conduct was unreasonable nor has he shown that Stern's conduct deprived him of a fair trial. Indeed, even though Stern's affidavit indicates that he did encourage Allison to plead guilty, he would have vigorously represented him at trial *if defendant advised me that he did not want to enter a guilty plea*. The choice was Allisons, and the record is replete with evidence to support that his choice, to enter the guilty plea, was made knowingly, voluntarily and competently.

### 2. Buyer/Seller Relationship

Allison's second claim for ineffective assistance of counsel was that Stern failed to argue a buyer/seller relationship (Doc. 7). This claim fails as well under the *Strickland* test.

Allison argues that Stern was ineffective for not raising the defense of buyer/seller relationship and claims the evidence only supported that he participated in a buyer-seller relationship, not a conspiracy (Doc. 7, p. 19). While the two charges share similar elements, a conspiracy also requires a common criminal goal between two or more people and requires the government to "offer evidence establishing an agreement to distribute drugs that is distinct from evidence of the agreement to complete the underlying drug deals. *United States v. Johnson,* 592 F.3d 749, 755 (7th Cir. 2010).

Conspiracy has two elements: (1) an agreement to commit an unlawful act; and (2) the defendant must have knowingly and intentionally joined that agreement. *United States v. Johnson,* 437 F.3d 665, 675 (7th Cir.2006). Proof of conspiracy may come from direct evidence or circumstantial evidence, as well as "the reasonable inferences ... concerning the parties' relationships, their overt acts, and their overall conduct," *United States v. Miller,* 405 F.3d 551, 555 (7th Cir.2005) (quoting *United States v. Navarrete,* 125 F.3d 559, 562 (7th Cir.1997)). Circumstantial evidence that indicates conspiracy, and not just a buyer-seller relationship, includes, for example: large-quantity drug sales; repeated or standardized transactions; a lengthy relationship between the parties; sales on credit (*i.e.*, fronting); warnings of threats by competitors or law enforcement; and sharing tools and supplies. *United States v. Moreno,* 922 F.3d 787, 794 (7th Cir. 2019).

Stern has more than thirty (30) years of experience as both a prosecutor and criminal defense attorney (Doc. 32-3). He reviewed the discovery and physical evidence

in this case and was aware of: at least seven (7) witnesses who purchased drugs from Allison; the recovery of 741.32 kilograms of MEU drugs; a controlled drug buy with marked funds and electronic surveillance; at least three (3) detailed in-depth confessions from Allison; as well as a proffer interview from Allison. (*Id.*) It was Mr. Stern's professional opinion that the government had enough evidence to support a conviction on conspiracy such that it was in Allison's best interest to enter into a guilty plea. (*Id.*)

The choice not to investigate a particular defense does not constitute deficient performance "if a lawyer has made a reasonable decision that makes particular investigations unnecessary." *Adams v. Bertrand,* 453 F.3d 428, 436 (7th Cir.2006). There are countless ways to provide effective assistance in any given case; even the best criminal defense attorneys would not defend a particular client in the same way. *Strickland*, 466 U.S. 668.

The evidence clearly provided ample grounds to support a conspiracy. First, Allison affirmatively accepted the factual basis provided at the plea hearing (Doc. 27-1, p. 12). Allison was involved with numerous others in the distribution of heroin and crack cocaine (*Id.*, p. 13). On multiple occasions, Allison obtained dealer amounts of heroin, cocaine or crack cocaine and marijuana (*Id.*). Allison sometimes had others distribute the drugs (*Id.*) Much of the time, the heroin, crack cocaine and other drugs would be obtained or provided on fronts (*Id.*). A large amount of heroin and cocaine not yet packaged for resale, along with a firearm, were found during a search of one of his residences (*Id.*).  A second search revealed U.S. currency, drug-packaging materials,

scales, along with more heroin and crack cocaine (*Id.*). Allison also admitted in his interview to being involved with others in the distribution of heroin, crack cocaine and cannabis and to receiving the firearm from another in return for crack cocaine. (*Id.,* p. 14). Second, the written stipulation of facts, which Allison indicated he signed after reviewing with Stern, was incorporated into the plea hearing and "sets forth more of the specifics" (*Id.* at 15; CR. 65). Based upon the foregoing, any argument for buyer-seller relationship versus a conspiracy would have been futile. As such, Allison has not shown that Stern's performance was unreasonable.

## II.   Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)

Allison argues that his prior Illinois drug offenses do not qualify as predicate offenses for the ACCA and cites to *Mathis v. United States,* 136 S.Ct. 2243 (2016) for said argument. Allison did not raise this argument on direct appeal, so the government claims it is procedurally defaulted.

### A. Applicable Law

The Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), imposes a mandatory minimum sentence of 15 years on a person who violates 18 U.S.C. § 922(g) and who has three prior convictions for a violent felony or a serious drug offense. In determining whether a prior crime counts as a predicate for purposes of the ACCA, a court uses a "categorical approach," looking not to the facts of the prior crime but to the statutory elements of the prior conviction. *Mathis v. United States,* 136 S.Ct. 2243 (2016). A prior crime qualifies as an ACCA predicate "if its elements are the same as, or narrower than, those of the generic offense." *Mathis,* 136 S. Ct. at 2247.

A violent felony is a crime punishable by more than one year of imprisonment that "has as an element the use, attempted use, or threatened use of physical force against the person of another" or "is burglary, arson, or extortion, [or] involves use of explosives." § 924(e)(2)(B).[4]  A serious drug offense is defined as follows:

> (i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46, for which a maximum term of imprisonment of ten years or more is prescribed by law; or

> (ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law.

> § 924(e)(2)(A).

Because petitioner's prior drug convictions were for violation of state law, subsection (ii) of the definition of a serious drug offense applies here.

### B. Discussion

In this case, the PSR used the following three offenses to determine that Allison was classified as an Armed Career Criminal: (1) Manufacture/delivery of controlled substance in Cook County, Illinois case 90C66074201; (2) Domestic battery in McLean County, Illinois case 97-CF-177; and (3) Drug conspiracy/unlawful delivery of controlled substance in McLean County, Illinois case 97-CF-38. Allison does not appear to dispute the domestic battery offense as a predicate, so this Court will focus on the two drug convictions from 1990 and 1997.

---

[4] The "residual clause" of the ACCA was declared unconstitutional in *Johnson v. US*, 135 S.Ct. 2551 (2015).  *Johnson* did not affect the validity of the two clauses quoted above.

In 1990 and 1997, Allison was charged (and convicted) of violations of 720 ILCS 570/401 and its predecessor, Ill.Rev.Stat., ch 56 ½, Section 1401, which provided, *inter alia*, that "it is unlawful for any person to knowingly manufacture or deliver, or possess with intent to manufacture or deliver, a controlled substance." The Cook County case, 90C66074201, involved a class X felony offense, which resulted in a 4-year sentence to the Illinois Department of Corrections. The McLean County case, 97CF38, involved pleas to class 1 and class 2 felony offenses, which resulted in a 6-year sentence to the Illinois Department of Corrections.

Allison asserts that the Illinois statute on drug offenses is overly broad; however, this Court is bound to follow binding precedent. The Seventh Circuit has specifically rejected Allison's argument and held that career offender enhancement under the United States Sentencing Guidelines, premised on an Illinois controlled substance conviction under 720 ILCS § 570/401, was proper. *United States v. Redden*, 875 F.3d 374 (7th Cir. 2017). *See also United States v. Neville*, 784 Fed.Appx. 950 (7th Cir. 2019) and *Wiggins v. Stancil,* 2020 WL 1663156. The Supreme Court has also recognized that a state offense ranks as a "serious drug offense" if it involves manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance. *Shular v. United States*, 140 S.Ct. 7979 (2020).

Based on the foregoing, Allison was appropriately categorized an armed career offender, and as such, was properly sentenced under the ACCA. Additionally, this argument is procedurally defaulted because it was not raised previously. *Hale v. United States*, 710 F.3d 711, 713–14 (7th Cir. 2013).

## III.   *Rehaif v. United States, 139 S.Ct. 2191 (2019)*

In count 3 of the superseding indictment to which Allison pled guilty, he was charged with a violation of possession of firearm by a felon in violation of 18 U.S.C. § 922(g)(1). Allison asks the Court to hold this argument in abeyance due to the recent Supreme Court decision of *Rehaif v. United States*, 139 S.Ct. 2191. However, because Allison did not raise this argument on direct appeal, the government claims it is procedurally defaulted, like the *Mathis* claim.

Allison did not raise a *Rehaif* argument in the district court during his criminal proceeding or direct appellate review, which is in direct contravention of a Section 2255 claim. To overcome his procedural default, Allison must "show cause for the default and actual prejudice, or that failure to consider the defaulted claim will result in a fundamental miscarriage of justice." *Cross v. United States*, 892 F.3d 288, 294-95 (7th Cir. 2018) (internal quotation marks and citations omitted).

### A. Applicable Law

In *Rehaif v. United States,* 139 S. Ct. 2191 (2019), the Supreme Court reviewed a case in which a district court judge instructed a jury that the "United States is not required to prove" that a defendant "knew that he was illegally or unlawfully in the United States" for purposes of convicting the defendant for possessing a firearm in violation of 18 U. S. C. §922(g). The Supreme Court reversed, holding that for offenses under that statute, the Government must prove both that the defendant possessed a firearm and that they knew that they were in the category of persons barred from possessing a firearm.

Prior to *Rehaif*, courts of appeal, including the Seventh Circuit, had held there were only three elements to a violation of 18 U.S.C. § 922(g): (1) that the defendant knowingly possessed a firearm, (2) that he was a convicted felon at the time he possessed the firearm, and (3) that the firearm traveled in interstate commerce. However, in *Rehaif*, the U.S. Supreme Court held that there is a fourth element that must also be proven – (4) that the defendant knew at the time he possessed the firearm that he had been convicted of a crime punishable by imprisonment for more than one year. 139 S. Ct. 2191. The Seventh Circuit has held that in cases where a defendant seeks collateral review of a sentence based in *Rehaif*, the defendant "bears the burden of showing that his erroneous understanding of the elements of § 922(g) affected his substantial rights—his decision to plead guilty—before he may do so." *United States v. Williams*, 946 F.3d 968, 970 (2020).

## B. Discussion

Any argument that Allison did not know he had been convicted of a crime punishable by imprisonment for more than one year at the time he possessed the firearm would not be plausible. *See United States v. Williams*, 946 F.3d 968 (7th Cir. 2020). At the time of his plea, Allison had previously been sentenced to prison for over a year on at least four separate occasions (1990 – 4 years, 1997 – 3 years, 1997 – 6 years, 2002 – 3 years, 2010 – 3 years). (CR. 67/sealed PSR). Additionally, he signed the stipulation of facts that stated the following:

> "At the time that defendant possessed the firearm, he had previously been convicted of numerous felony offenses including felony domestic battery and multiple felony drug offenses." (CR. 65).

Therefore, there is no reasonable probability that Allison would have declined to plead guilty had he known that a § 922(g) conviction required that he know he had been convicted of such a crime.

Absent a showing of both cause and prejudice, procedural default will only be excused if the Allison can demonstrate that he is 'actually innocent' of the crimes of which he was convicted. *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016). Allison cannot overcome his procedural default based on actual innocence.

To pass through the actual innocence gateway, Allison must show that "'it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.'" *See House v. Bell*, 547 U.S. 518, 536-37 (2006); *see also Bousley v. United States*, 523 U.S. 614, 623 (1998) (citations & quotations omitted). "Actual innocence" means factual innocence, not mere legal insufficiency of proof of guilt. *Id.*

Allison cannot establish his actual innocence under *Rehaif* for at least two reasons: (1) he signed a plea agreement and stipulation of fact stating that he had previously been convicted of a felony punishable by imprisonment for a term exceeding one year; and, (2) his presentence report indicates that he had previously been sentenced to prison for a term exceeding one year on multiple occasions. *See* ECF Nos. 26, 27, 30; *see also Boose v. Marske*, 2019 WL 4393077, *3 (W.D. Wis. 2019).

Far from establishing "actual innocence," both these documents illustrate the fact that Allison had previously been convicted of a felony offense and that there was a factual basis for his knowledge that he is felon. *See Brewster v. United States*, 2019 WL 5076404 (W.D.N.C. Oct. 9, 2019)("courts have held that *Rehaif* relief does not apply in cases where a defendant entered a guilty plea.").

Moreover, the Seventh Circuit has held that:

> . . . the Supreme Court decided *Rehaif* and held that an element of a conviction under 18 U.S.C. §§ 922(g), 924(a)(2), is the defendant's knowledge of his status (at least for felons and aliens illegally in the United States).
>
> 139 S. Ct. at 2200. For Williams, that means the government *971 would have needed to prove—or he to admit—that he knew he had "been convicted in any court of[ ] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). *United States v. Williams,* 946 F.3d 968, 970–71 (7th Cir. 2020).

The Seventh Circuit also held that:

> Although the record does not establish definitively whether Dowthard knew of his felon status at the time he possessed the firearm, he has offered us no reason to believe he might not have. He previously was sentenced to and served more than a year in prison on his drug conviction. This time in prison would severely hamper an assertion that he was ignorant of the fact that this crime was punishable by more than a year of imprisonment. *See United States v. Dowthard*, 948 F.3d 814, 818 (7th Cir. 2020).

Similarly, Allison has provided no basis to conclude that a reasonable juror could have inferred that he was somehow unaware that he had been convicted of one or more felonies when he possessed the firearm. Any failure by the government to "prove" this element of the offense was harmless and did not amount to a miscarriage of justice. Because Allison cannot establish "actual innocence", there is no viable claim under *Rehaif*.

### CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the Court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner.

A petitioner's right to appeal a district court's denial of a Section 2255 petition is not absolute; it depends on whether the district court grants a certificate of appealability. See *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003). A certificate of appealability is warranted only where (1) a petitioner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Allison has not made a substantial showing that he was denied a constitutional right. Reasonable jurists could not debate whether Allison's counsel was ineffective, whether the ACCA was correctly applied, or whether a claim survives under *Rehaif*. The Court therefore declines to issue a certificate of appealability.

## CONCLUSION

Alphonso Pierre Allison's Amended Petition to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 7) is **DISMISSED** with prejudice. Given the record of the underlying criminal action where Allison was provided with three separate CJA attorneys, as well as numerous continuances of the trial setting and the change of plea hearings, it is obvious that the Court was invested in guaranteeing that Allison's rights were more than protected.  It also appears as if this action was frivolous and without merit as the evidence was obvious and Allison's argument is wholly without merit. *Spiegel v. Continental Illinois Nat'l Bank,* 790 F.2d 638 (7t Cir. 1986). The Court **DECLINES** to issue a certificate of appealability.

**IT IS SO ORDERED.**

**DATED: <u>March 9, 2021</u>**

**<u>/s/ Stephen P. McGlynn</u>**
**STEPHEN P. McGLYNN**
**U.S. District Judge**
